New York University, Appellant, v. The Loomis Labora-
tory, Respondent.

Trust — When Declarations of an Agent with Limited Author-
ity Insufficient to Impose Trust upon Property Purchased and
Conveyed by Him as Agent.   Where an agent, who was authorized by
an undisclosed principal to purchase land and erect and equip thereon a
laboratory for research and instruction in medical sciences, with moneys
to be furnished for that purpose by his principal, and to convey the
laboratory, when completed, to a corporation to be created and organized
for the purpose of holding the property and managing the affairs of the
laboratory, made declarations and statements that the laboratory, when
completed, was to be held for the exclusive use of the medical department
of a certain university, evidence of such statements is not sufficient to
sustain an action to impress, upon the property of the laboratory, a trust
in favor of the university, where there is evidence that the statements of
the agent were unknown to, and unauthorized by, the principal, and the
latter denies that he assented to or ratified them when made known to
him, and it is established that he furnished the money expended by the
agent in the purchase of the lot and the erection and equipment of the
laboratory building, and that the agent had no title or interest therein
except as agent, and no authority except to carry out the specific instruc-
tions of his principal.

*New York University* v. *Loomis Laboratory,* 68 App. Div. 635, affirmed.

(Argued February 26, 1904; decided March 22, 1904.)

Appeal from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered Febru-
ary 4, 1902, affirming a judgment in favor of defendant
entered upon a dismissal of the complaint by the court on
trial at Special Term.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*George A. Strong* for appellant.   Erroneous evidence was
admitted upon the trial and proper evidence was excluded.
(*Farleigh* v. *Cadman,* 159 N. Y. 169; *Hirsh* v. *Auer,* 146
N. Y. 13; *Matter of Carpenter,* 131 N. Y. 86; *Gilman* v.
*McArdle,* 99 N. Y. 451; *Parry* v. *Lambert,* 98 N. Y. 300.)

*Charles E. Miller* and *Bronson Winthrop* for respondent. The evidence on behalf of appellant was so weak that, if the testimony of Stetson had been excluded and the catalogues admitted, no other judgment could possibly have been rendered. (*McGean* v. *M. Ry. Co.*, 117 N. Y. 219.)

VANN, J.   The plaintiff was incorporated in 1831 by a special act of the legislature " for the purpose of promoting literature and science," and is an institution of learning well known by its popular and corporate name of " The New York University."   (L. 1831, ch. 176.)

The defendant was incorporated in 1887, also by special act, " with all the privileges and immunities of a seminary of learning for the promotion of original research in chemistry, biology and pathology, and for elementary teaching in these branches."   (L. 1887, ch. 329.)

The object of this action was to establish a trust in favor of the plaintiff with reference to all the property held by the defendant in its own name, and to enjoin the defendant from excluding the plaintiff from the benefit and enjoyment thereof: The theory of the plaintiff is that in December, 1887, Dr. Alfred L. Loomis held the real estate in question in trust for the plaintiff and that without consideration he conveyed it to the defendant upon the same trust, but without expressing it in the deed ; that the defendant now refuses to recognize the trust and threatens to form a union with some " rival institution " and to place the property under its control.

The theory of the defendant is that no trust ever existed with reference to said property, and that although it was authorized by the act which brought it into existence, in its discretion, to transfer all its real and personal property to the plaintiff and thereupon cease to exist, it has never done so and has no desire to do so.   The trial justice, by a decision in the short form, dismissed the complaint upon the ground that no trust was ever created in favor of the plaintiff as to any property held by the defendant, and the judgment entered accordingly was unanimously affirmed by the Appellate Division.

While the facts are placed beyond our control by the united action of the courts below, it is necessary to examine the evidence to some extent in order to properly consider the questions of law presented by the rulings made during the trial.

The main evidence relied on by the plaintiff to establish the trust was as follows : In 1887, Dr. Loomis, although one of the faculty was not a member of the council or governing board of the plaintiff, but was one of the eight directors of an institution incorporated in 1883 for "educational and scientific purposes" under the name of the "Medical College Laboratory of the City of New York." (L. 1883, ch. 125.) On the 23rd of March, 1887, Dr. Loomis made a report to the directors of the Medical College Laboratory, a stranger to the alleged trust, in which he made the following statement : "About one year ago a gentleman gave me a power of attorney to spend one hundred thousand dollars *for him* in the erection and equipment of a laboratory building for the exclusive use of the faculty and students of the Medical Department of the New York University. He designated that it should be known as the 'Loomis Laboratory of the Medical Department of the New York University;' that when completed it should be handed over to a board of trustees, who should hold it in trust for the use of the faculty and students, as already indicated ; that in every way, and as might from time to time be indicated by the faculty, it should be used to increase the teaching facilities of the Medical Department of the University ; that if at any time the council of the University was to assume the pecuniary obligations of the faculty and take the college building, the trustees of the laboratory may transfer the laboratory property to the council. In accordance with the wishes of the donor, I have had a bill introduced into the legislature, incorporating the laboratory. * * * I have also had all the necessary steps taken * * * for the completion of the building by 10th September, 1887, according to the contracts presented. The donor will give the faculty any legal documents which they may wish, guaranteeing to them that the laboratory

and its equipment shall always be for their use in laboratory teaching. It is understood that the trustees are to be simply the custodians of the property and of any endowment which the laboratory may receive." This report was accepted and ordered spread upon the minutes.

On the 12th of December, 1887, Dr. Loomis presented to the defendant a deed dated that day, by which he and his wife in consideration of one dollar conveyed to the defendant the lot on which the laboratory building stands. In presenting the deed to the defendant's board of trustees, as their minutes show, he made the following statement: "In November, 1886, a friend gave me the authority to expend for him $100,000 in the purchase of grounds and the erection and equipment of a laboratory in connection with the Medical Department of the University of the City of New York. The only stipulations were that the name of the donor should remain a secret, and the laboratory should be called the Loomis Laboratory. I was to expend the money in the manner which seemed best to me for the accomplishment of a perfect laboratory in every respect. In February, 1887, I purchased the ground, 35x100 feet, adjoining the University Medical College, for $17,700, and in March I accepted the plans and specifications * * * for the erection of a suitable building. In the following April the contracts for the erection of a building according to the specifications were signed by the builders, and the work of construction was immediately commenced and completed in January, 1888, at the cost, with apparatus which was purchased during the construction, of $101,600. During this construction and at the time of its completion I received from the donor $101,600, and presented to him the vouchers for the moneys expended. I now deliver to this corporation the deed of the land and building." The trustees of the defendant accepted the deed and passed a resolution thanking the donor for his gift.

There was no evidence that Dr. Loomis ever stated to the plaintiff that the gift was for its benefit, or that he made any statement on the subject, except to the two other, inde-

pendent corporations. The plaintiff apparently never heard of the alleged trust until after all rights had become fixed, although evidence was given by one witness tending to show that Dr. Loomis, who was not living at the time of the trial, once stated to the chancellor of the university that a sum of money had been placed in his hands for its benefit, and that it was to be put into a laboratory building. Subsequently the present structure was erected, and on the front thereof the following inscription was placed : " Loomis Laboratory of the Medical Department of New York University." There was also evidence that some of the professors of the university had used the building and had given instruction to its students therein.

While there was other testimony, this was the strength of the plaintiff's case and it was met by evidence of the following character. It appeared, without contradiction, that Col. Oliver H. Payne furnished the money to buy the land, as well as to erect the building, and that he subsequently endowed the institution. Col. Payne testified that he furnished the money to Dr. Loomis during the years 1886 and 1887. He was asked " What instructions did you give Dr. Loomis about the use of the money ? " Subject to objection and exception he answered as follows : " I told him to buy a lot and to build and equip a laboratory, to be transferred later to a corporation to be organized under the act of the legislature, to be called the Loomis Laboratory. I told him that it was my object to build a laboratory for original research and elementary teaching in scientific medicine and that this laboratory was to be entirely independent ; and I intended, as I did afterwards, to endow it with sufficient funds to run it ; I desired and instructed him to have five trustees ; two of those trustees I insisted should be himself and his son ; the other three he should select ; that the property, when completed, should be transferred to the Loomis Laboratory Association, to be governed entirely by these five trustees ; that the articles incorporating the Loomis Laboratory should state exactly what the object of my gift was and intention."

Col. Payne further testified that there was never a word said by him to any one that the money should be used in the interest or for the benefit of any institution other than the defendant. No mention was at any time made of the plaintiff, its medical department, faculty or students in any conversation between himself and any person or persons. In December, 1886, he went to Europe for his health, and before leaving had a long interview with Dr. Loomis, during which he said he would give him a power of attorney "authorizing him to expend $100,000 for me in the erection and equipment and the buying of the lot for the laboratory * * * and that this was to be transferred to the company to be organized under the act of the legislature, to be called the Loomis Laboratory." Dr. Loomis had such a paper prepared, and it was duly executed by Col. Payne, who never knew or heard of any statement made by the doctor to the trustees of the defendant in relation to this property, and no such statement was made to them or to any one by his authority. He never knew of the inscription on the front of the building, and did not authorize it to be placed there. Upon his return from Europe in June, 1887, Dr. Loomis showed him the act of the legislature which embodied what he was authorized to do, and also contained a clause that under certain circumstances the trustees should have power to transfer the property to the plaintiff, which he had not authorized. Dr. Loomis explained that this clause was inserted by advice of his attorney to provide for the contingency that the trustees might become tired of the trust and wish to wind up the institution. When this explanation was made, Col. Payne raised no objection.

After the incorporation Col. Payne gave the further sum of $80,000 to the defendant to endow it and make it absolutely independent. He did not know that Dr. Loomis was connected with the New York University, or was a professor in that institution. No word ever passed between these men to indicate any intention other than that the institution thus founded was to be entirely independent. Col. Payne never said anything to Dr. Loomis nor authorized him to say any-

thing to others about the erection and equipment of a laboratory building for the exclusive use of the faculty and students of the medical department of the plaintiff, or that the institution founded by him should be known as the Loomis Laboratory for the Medical Department of the New York University, or that when completed the building should be handed over to the board of trustees to hold in trust for the use of its faculty and students. Col. Payne positively denied a statement made by a witness for the plaintiff that he had assented to the declaration of Dr. Loomis, upon hearing it read early in 1887.

Much of this evidence was received subject to the objection that it was incompetent and immaterial, and exceptions were duly taken to the rulings of the court.

Mr. Stetson, who drew the power of attorney referred to by Col. Payne, was asked to state its contents. This was objected to by the plaintiff, not as secondary evidence, but upon the ground that "other statements made at other times by the alleged trustee in a controversy of this character cannot be put in evidence; they do not tend to nullify the statement he may have made at any time establishing the trust." The objection was overruled, an exception was taken and the witness answered: "The power of attorney was my own suggestion to Dr. Loomis. It contained authority to Alfred L. Loomis to go on and create liabilities, make contracts for the purchase of land and the erection of a building up to the amount of $100,000," but did not state what was to be done with the building. Subject to a similar objection Mr. Stetson was permitted to testify that Dr. Loomis afterward informed him that the power of attorney had been signed by the donor of the money.

Dr. Lewis A. Stimson testified that he was one of the trustees of the defendant and from 1878 to 1898 was a member of the medical faculty of the plaintiff; that instruction was given in the Loomis Laboratory to some of the students of the medical department of the university, but the fees for such instruction were paid by the students to the Loomis Labora-

tory and were not received by the university or its medical department. During his cross-examination, the annual catalogues issued by the plaintiff in 1888 and 1889 were identified by him and he testified that proofs were sent to the members of the faculty for examination and that the catalogues themselves were distributed generally. Each catalogue contained the statement that through the liberal gift of an unknown friend of the university a laboratory building had been erected, which, by a condition attached to the gift, was to be known as the " Loomis Laboratory of the Medical Department of the University of the City of New York." These statements were offered in evidence by the plaintiff, but were excluded upon the objection of the defendant.

This reference to the various exceptions and the condition of the evidence when they were taken, shows that they raise no reversible error, because if the evidence excluded had been received and that taken under objection had been excluded, the plaintiff could not have prevailed. Its evidence, even if the catalogues, which were excluded, had been received, was not sufficient to establish a trust. Independent of the question whether the defendant had power to hold property in trust for another corporation, no reasonable view of the testimony would authorize a decision in favor of the plaintiff.

· It is conceded that Col. Payne created the property. He bought the land and erected the building, appointing Dr. Loomis as his agent for that purpose, instead of employing a broker or contractor. He furnished all the money and Dr. Loomis accounted to him therefor by presenting vouchers showing how it was expended. No one else had put a dollar in the property when the deed was delivered to the defendant and the gift thereby completed. Until then the gift was inchoate, or merely in contemplation, and Col. Payne still owned the property as the beneficial owner. While Dr. Loomis held the title a short time, he never was the owner of the lot or the building, for he bought and built as the agent of Col. Payne. He did not use his own money, but the money furnished by another, and when the laboratory was completed

it belonged to the one who had provided the money and under whose direction it had been expended. Dr. Loomis could neither use it for himself nor give it to another, except as authorized by his principal. It was his duty to convey to such person or corporation and to such only, as Col. Payne designated. The defendant does not stand in his shoes, but in those of his principal, for whom he acted in all things and without whose authority he could not lawfully act at all. He had no volition in the premises and could take no independent action. His unauthorized declarations bound no one but himself and when he said that the property was for the benefit of the plaintiff, he created no obligation and conferred no right, because there is no evidence that the real owner authorized the statement. He could not impress a trust upon the property, for he had neither interest nor authority, but was simply the conduit for the passage of the gift from the donor, who brought the laboratory into existence, to the donee, who was specially organized to take and enjoy it. An agent or trustee cannot confer authority upon himself, but is bound to faithfully apply the property intrusted to him according to the confidence reposed in him. If Dr. Loomis, as a sworn witness, had testified to his authority to make the declaration upon which the plaintiff relies, a different question would be presented. No such evidence, however, was given by any one and, hence, the doctor's naked declaration is without legal force. Col. Payne had the right to do as he wished with his own property and there is no proof that he ever uttered a word or did an act showing that he intended to give anything to the plaintiff or for its benefit, at least until the title of the defendant was complete. While others may have said that he so intended, there is no evidence that he ever said so, or authorized them to say so. Doubtless there was an honest misunderstanding as to the purpose of the unknown donor, but he was not responsible for it, although his modest method of doing good may have led to it. The property did not come from Dr. Loomis, but from Col. Payne, and evidence

10

of what the former said about it is of no importance unless authorized, and proof of authority to make any declaration upon the subject was wholly wanting. He was authorized to convey to the defendant and to no one else, but he was not authorized to attach a condition to the conveyance for the benefit of the plaintiff. It was not his property nor his gift. Over and over again and before the gift was complete, he stated that he was acting only as the agent of a friend who had furnished the money to erect a laboratory but who wished that his name should be kept secret. He did not assume to do anything or say anything in his own name, but simply in behalf of another. What he did was authorized and bound all concerned, but what he said was unauthorized and bound no one but himself.

Moreover, aside from the fact that if the rulings excepted to had been reversed, the result could not have been changed, the evidence received was competent and that excluded was incompetent. We will notice only those especially relied upon by the plaintiff. The instructions of Col. Payne to Dr. Loomis as well as the power of attorney were competent, as part of the *res gestæ*, to show the capacity in which Dr. Loomis acted in purchasing the land and erecting the building. They did not contradict but corroborated his statement that he was acting as agent throughout the entire business. They confirmed his declaration that he was acting for an undisclosed principal and showed that he did not assume to act for any one else. They measured the nature and extent of his authority, for they made him the attorney of Col. Payne to make the contracts for him which brought the laboratory into existence. They laid at the root of the subject, for they antedated substantially all that was done by the attorney in fact and were the charter of his power. In connection with the act incorporating the defendant, which was passed to carry out the wishes of the donor, they show his method, object and intention. They constitute the most material and important evidence contained in the record.

The catalogues were properly excluded, because a trust can-

not be created by the declarations of a party in his own favor, when they are not brought to the knowledge of the creator of the trust. What the plaintiff said was of no importance unless Col. Payne knew of it, and there is no evidence that he ever saw either catalogue. The fact that Dr. Loomis and others had read the statement did not bind Col. Payne. If all the world had seen it and he had not, it would still be a self-serving declaration. If one proclaims in the most solemn manner that certain property belongs to him, he can take nothing from it unless the real owner directly or indirectly assents to it.

The question in relation to certain personal property, which did not come from Col. Payne, is not raised by any exception and we cannot consider it. The decision of the Special Term was in the short form, the facts not being stated and the exception thereto presents nothing which survives unanimous affirmance.

The judgment should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN and WERNER, JJ. (and GRAY, J., in result), concur.

Judgment affirmed.